# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

### NO. 03-13-00499-CV

**Sejoon Kim, M.D., Appellant**

**v.**

**State Board of Dental Examiners, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT NO. D-1-GN-11-003869, HONORABLE STEPHEN YELENOSKY, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

The State Board of Dental Examiners (the "Board") assessed a sanction against Dr. Sejoon Kim after he failed to report to the Board that his patient had been hospitalized shortly after he treated her. After the Board issued its order, Dr. Kim appealed the imposition of the sanction, and the district court affirmed the decision by the Board. Dr. Kim appeals the district court's judgment, and we will affirm.

## BACKGROUND

Dr. Kim is a dentist and oral maxillofacial surgeon who is licensed in Texas. On the day after Dr. Kim removed the wisdom teeth from one of his patients, A.G., she was admitted into a hospital for the treatment of "facial cellulitis." Approximately six days later, A.G. was released from the hospital. A few days afterwards, A.G. contacted Dr. Kim's office to inform him that she had been hospitalized, and Dr. Kim's staff scheduled A.G. for a follow-up visit. During the

follow-up visit, Dr. Kim examined A.G. and determined that the wound from the surgery that he performed had almost healed and that there was no sign of infection. Dr. Kim did not report A.G.'s hospitalization to the Board because he did not believe that her hospitalization was related to her wisdom teeth being removed.

After becoming aware of A.G.'s hospitalization, the Board filed a formal complaint against Dr. Kim alleging that Dr. Kim "failed to report the hospitalization of a dental patient, as a possible consequence of having impacted third molars removed, to the Board within thirty (30) days of being aware of the hospitalization. The patient received dental treatment . . . [and] was hospitalized on the following day." In its complaint, the Board alleged that Dr. Kim's failure to report was a violation of a law regulating dentists. In particular, the Board urged that Dr. Kim's conduct violated subsection 108.6(2) of title 22 of the Administrative Code. That provision requires a dentist to submit a report to the Board regarding "[t]he hospitalization of a dental patient, as a possible consequence of receiving dental services from the reporting dentist . . . within 30 days of the hospitalization or such time as the dentist becomes aware of or reasonably should have become aware of the hospitalization." 22 Tex. Admin. Code § 108.6(2) (2014) (State Board of Dental Examiners; Report of Patient Death or Injury Requiring Hospitalization). When asserting that Dr. Kim's conduct was sanctionable, the Board referred to subsection 263.002(a)(10) of the Occupations Code, which authorizes the Board to discipline a dentist if the dentist "violates or refuses to comply with a law relating to the regulation of dentists." Tex. Occ. Code § 263.002(a)(10).[1]

---

[1] That subsection provides in full as follows:

The board, after notice and hearing, may reprimand a person who holds a license issued under this subtitle, issue a warning letter to a person licensed under this subtitle, impose a fine on a person licensed under this subtitle, impose an

Subsequent to the Board filing its complaint, a hearing was scheduled before an administrative law judge for the State Office of Administrative Hearings. Prior to the hearing, the Board indicated that it was not alleging that Dr. Kim "failed to meet the standard of care" when treating A.G., and during the hearing, the Board focused on Dr. Kim's alleged failure to report the hospitalization of A.G. After considering the parties' arguments and briefing, the administrative law judge issued a proposal for decision stating that the Board had proved "by a preponderance of the evidence" that Dr. Kim had committed the alleged violation. Further, the administrative law judge explained that based on the Board's "Disciplinary Matrix," she recommended that the Board assess "either an administrative penalty ticket or conditional dismissal."

The disciplinary matrix was adopted by the Board before the hearing in this case. *See* State Board of Dental Examiners Disciplinary Matrix, 35 Tex. Reg. 8152, 8152-66 (2010). The matrix was designed to provide "licensees, attorneys, the public, and Administrative Law Judges ready access to the Board's enforcement policies." *Id.* at 8152. The matrix consists of several charts each containing a general category of prohibited conduct, including the following categories of violations: standard of care, impermissible delegation, dishonorable or unprofessional conduct,

---

administrative penalty under Subchapter A, Chapter 264, on a person who holds a license under this subtitle, place on probation with conditions a person whose license has been suspended, or revoke or suspend a person's license issued under this subtitle if the person:

. . .

(10) violates or refuses to comply with a law relating to the regulation of dentists or dental hygienists.

Tex. Occ. Code § 263.002(a)(10).

criminal convictions, chemical dependency or improper possession or distribution of drugs, fraud and misrepresentation, and violation of a law regulating dentistry. *Id.* at 8156-65; *see* Tex. Occ. Code § 263.002(a) (providing types of conduct that Board has authority to discipline). Each chart also lists specific infractions falling within the general category. In addition to organizing various offenses into charts, the matrix specifies the severity of those violations by assigning them into one of four tiers. Under the matrix, first-tier violations "are those that the Board determines to be less serious, or which pose minimal threat to public safety, after consideration of any aggravating or mitigating factors," and second-, third-, and fourth-tier violations are "those that the Board determines to be more serious, or which pose more than a minimal threat to public safety, after consideration of any aggravating or mitigating factors." 35 Tex. Reg. at 8152.

The chart at issue in this case pertains to violations of a law "relating to the regulation of dentists." *See* Tex. Occ. Code § 263.002(a)(10). Although this chart does specify certain prohibited actions, it does not list the failure to report required under subsection 108.6(2) of title 22 of the Administrative Code. *See* 22 Tex. Admin. Code § 108.6(2). However, the chart does contain a catch-all provision for the violation "of another law regulating dentists" and specifies that this type of violation is potentially a first- through a fourth-tier violation. The core issue in this appeal is whether the Board incorrectly determined that the conduct at issue was a second-tier violation "of another law regulating dentists."

In addition to establishing four tiers for violations, the matrix lists permissible sanctions for each tier. The permissible sanctions include dismissals, administrative penalties, warnings, and other more severe sanctions that are not relevant to this appeal. Dismissals carry

4

"[n]o disciplinary action . . . [and] may be conditioned." 35 Tex. Reg. at 8154. Administrative penalties or tickets are imposed for "violations that do not involve the provision of direct patient care." *Id.* Warnings are the "[l]owest level of disciplinary action." *Id.* In addition, the matrix lists various aggravating and mitigating factors for the Board to consider when assessing a sanction. *Id.* For the chart at issue in this case, the matrix specifies that the permissible sanctions for first-tier violations are "[a]dministrative [p]enalty ticket[s]" or "[c]onditional dismissal[s]" and for second-tier violations are "[c]onditional dismissal[s]" or "[w]arning[s] or [r]eprimand[s] with stipulations." *Id.* at 8163.

When reviewing the allegations against Dr. Kim, the administrative law judge concluded that because the Administrative Code requires dentists to report to the Board when a patient is hospitalized as a "possible consequence of receiving dental services," 22 Tex. Admin. Code § 108.6(2), Dr. Kim's failure to report A.G.'s hospitalization constituted a violation of "a law relating to the regulation of dentists" consistent with the Board's complaint. Moreover, the judge determined that although this type of failure to report is not specifically listed in the matrix, the alleged violation falls under the catch-all provision of the chart as a violation "of another law regulating dentists." Further, the judge concluded that the violation was a first-tier one because no evidence was introduced regarding the aggravating and mitigating factors listed in the matrix and because "there is no evidence that such violation would pose any threat to public safety."[2] Stated

---

[2] In particular, the administrative law judge explained that because there was no evidence regarding any aggravating or mitigating factors, she had to assume that this was Dr. Kim's first violation and that he had no prior disciplinary action against him. Plus, she related that she assumed that "there was no actual or potential patient harm caused by the violation in light of the undisputed fact that Dr. Kim's care of A.G. was appropriate and within the standard of care at all times."

5

differently, the administrative law judge concluded that under the matrix a violation of "a law relating to the regulation of dentists constitutes a First Tier violation where such violation poses minimal or no threat to public safety and no aggravating factors are present." For these reasons, the administrative law judge recommended that the Board impose as a sanction either "an administrative penalty ticket or a conditional dismissal."

After receiving the proposal for decision and after convening a hearing regarding the proposal, the Board issued its order. In its order, the Board modified the sanction suggested by the administrative law judge and elevated the sanction from a ticket or conditional dismissal to a warning. *See* Tex. Gov't Code § 2001.058(e) (permitting agency to modify findings and conclusions made by administrative law judge). Once the Board issued its order, Dr. Kim sought judicial review of the Board's decision. *See id.* §§ 2001.171 (explaining that person who exhausts his administrative remedies "and who is aggrieved by a final decision in a contested case is entitled to judicial review"), .174 (setting out review under substantial-evidence rule); Tex. Occ. Code § 263.009 (authorizing person aggrieved by Board's decision "to appeal" as provided by Government Code). After convening a hearing on the matter, the district court issued its judgment affirming the Board's order. Subsequent to the district court making its ruling, Dr. Kim filed this appeal.

**DISCUSSION**

In a single issue on appeal, Dr. Kim argues that the district court "erred in affirming the Board's construction of its own disciplinary matrix when it issued a warning to Dr. Kim instead of an administrative penalty ticket or a conditional dismissal."

6

The Board has broad discretion when deciding what penalty to impose, *Sears v. Texas State Bd. of Dental Exam'rs*, 759 S.W.2d 748, 751 (Tex. App.—Austin 1988, no writ), and the Board is not required to treat sanction recommendations as presumptively binding in the way that agencies are required to treat findings of fact and conclusions of law, *see Froemming v. Texas State Bd. of Dental Exam'rs*, 380 S.W.3d 787, 792 (Tex. App.—Austin 2012, no pet.). Accordingly, the question to be answered in this case is whether the Board correctly construed its own matrix when deciding the appropriate sanction to impose. *See* 22 Tex. Admin. Code § 100.20(b), (c) (2014) (State Board of Dental Examiners, Final Board Decisions in Contested Cases) (providing that "[t]he board welcomes recommendations of administrative law judges as to the sanctions to be imposed, but the board is not bound by such recommendations" and that "[a] determination of the appropriate sanction is reserved to the board"); *see also Texas State Bd. of Dental Exam'rs v. Brown*, 281 S.W.3d 692, 697 (Tex. App.—Corpus Christi 2009, pet. denied) (explaining that agency has discretion to assign penalty when it determines statute has been violated). *But see Granek v. Texas State Bd. of Med. Exam'rs*, 172 S.W.3d 761, 781-82 (Tex. App.—Austin 2005, no pet.) (concluding that agency's explanation for changing sanction suggested by administrative law judge was arbitrary and capricious because it was based on unproven assertions that were made part of Board's order, that contradicted Board's other conclusions, and that were required to be disclosed to any health care facility where doctor had or sought privileges).[3]

---

[3] In this issue, Dr. Kim asserts that if the Board elects to change the proposed sanction recommended by an administrative law judge, the Board is obligated under both the Government Code and the Administrative Code to specify the reason and the legal basis for any change. *See* Tex. Gov't Code § 2001.058(e) (authorizing agency to change finding of fact or conclusion of law if, among other reasons, agency determines that administrative law judge "did not properly apply or

When criticizing the Board's actions, Dr. Kim urges that the Board misapplied the plain language of the disciplinary matrix when it determined that he should be sanctioned with a warning. *See Heritage on the San Gabriel Homeowners Ass'n v. Texas Comm'n on Envtl. Quality*, 393 S.W.3d 417, 424 (Tex. App.—Austin 2012, pet. denied) (explaining that if "there is vagueness, ambiguity, or room for policy determinations," courts generally defer to agency's interpretation and that agency rules are construed "in the same manner as statutes, using traditional principles of statutory construction"). As set out earlier, the failure to report at issue is governed by subsection 108.6(2) of title 22 of the Administrative Code, *see* 22 Tex. Admin. Code § 108.6(2), and the failure

---

interpret applicable law, agency rules, written policies," or "prior administrative decisions" and requiring agency to "state in writing the specific reason and legal basis for a change"); 22 Tex. Admin. Code § 107.51(a)(1), (b) (2014) (Board of Dental Examiners, Findings of Fact and Conclusions of Law) (same). Further, Dr. Kim argues that "[b]ecause the Board failed to explain with particularity the specific reason and legal basis for changing the [administrative law judge]'s decision with regard to the sanction imposed upon Dr. Kim, the trial court should not have affirmed its decision."

When confronted with a similar issue in a recent case, this Court assumed without deciding that the requirements for modifying findings and conclusions applied to sanction modifications and then decided that those requirements were complied with. *Froemming v. Texas State Bd. of Dental Exam'rs*, 380 S.W.3d 787, 792-93 (Tex. App.—Austin 2012, no pet.); *see also id.* at 791 n.3 (explaining that although Froemming only argued that requirements of Administrative Code were not complied with, "a determination that the Board complied with" Administrative Code provision "is necessarily a determination that the Board also complied with" provision of Government Code containing same directives). Performing that same type of analysis, we would similarly conclude that the requirements for modifying findings and conclusions had been met in this case. When modifying the proposed sanction in this case, the Board stated that the administrative law judge "did not properly apply the Board's disciplinary matrix," that the failure to report the hospitalization of a patient is not listed in the Board's rules as an offense for which an administrative citation is permissible, that a conditional dismissal is not appropriate for a failure to report because potential patient harm exists and because conditional dismissals will not encourage compliance, that neither an administrative penalty ticket nor a conditional dismissal is an appropriate sanction under these circumstances, that the failure to report "is a Tier Two violation of the Board's matrix," and that the appropriate sanction is a "Sanction of a Warning."

8

to comply with this provision is sanctionable under all four tiers of the chart addressing violations of a law regulating dentists, *see* Tex. Occ. Code § 263.002(a)(10). In light of that, Dr. Kim contends that "[t]he only possible reference to a failure to report a hospitalization" in the relevant chart "of the matrix is under the" catch-all provision for "First Tier violation of another law regulating dentists." Importantly, Dr. Kim stresses that the only permissible sanctions for a first-tier violation according to the chart are either an administrative penalty ticket or a conditional dismissal, and he urges that the Board should have imposed one of those penalties after concluding that he failed to report A.G.'s hospitalization.

Furthermore, Dr. Kim points out that although the failure-to-report infraction at issue in this case is not explicitly mentioned in the matrix, there is another failure-to-report obligation falling under the standard-of-care chart. *See id.* § 263.002(a)(4). Specifically, that chart states that the failure to report the death of a patient or an injury to a patient requiring hospitalization is a second-tier violation that is subject to a warning sanction as well as other more serious penalties. However, in light of the fact that there was no allegation that Dr. Kim violated any standard of care or that A.G.'s hospitalization was the result of any violation of the standard of care, Dr. Kim insists that the Board misconstrued the matrix when it improperly sanctioned him as if the Board had determined that he violated the failure-to-report requirement found under the standard-of-care chart.

In addition, Dr. Kim highlights, as discussed earlier, that the matrix specifies that first-tier violations "are those that the Board determines to be less serious, or which pose minimal threat to public safety, after consideration of any aggravating or mitigating factors" and that administrative penalties or tickets are imposed for "violations that do not involve the provision of

9

direct patient care." In light of these directives, Dr. Kim insists that the conduct at issue could only be a first-tier violation because it was not based on the direct care of A.G. and because there was no evidence of any aggravating factors listed in the matrix.

Although Dr. Kim correctly points out that the chart addressing violations of laws regulating dentists contains an entry for first-tier violations of those laws and although Dr. Kim insists that the failure to report in this case *must* fall under that entry, the chart does contain entries for second-, third-, and fourth-tier violations of laws regulating dentists. Accordingly, the type of violation at issue in this case could potentially fall under any of the four tiers. Moreover, although Dr. Kim highlights that none of the aggravating factors listed in the matrix were mentioned by the Board when it changed the suggested sanction, we do not believe that the absence of these factors compels a conclusion that the conduct must be a first-tier violation. In fact, the matrix mandates that the punishment level for certain types of violations starts above the first tier and may be further elevated by the presence of aggravating factors.

Moreover, in deciding in which tier to place this type of failure to report, the Board was guided by the fact that the matrix specifies under the standard-of-care category that the failure to report a patient's "death or injury requiring hospitalization" is a second-tier violation. Furthermore, although Dr. Kim urges that an administrative penalty would have been warranted here because those penalties are given for violations not involving direct patient care and because the Board determined that there was no violation of any standard of care, the fact that no standard of care was alleged to have been violated does not necessarily mean that the sanctionable conduct did not stem from direct-patient care. To the contrary, the terms of the governing provision at issue

10

demonstrate that the basis for the violation is the treatment of a patient. *See* 22 Tex. Admin. Code § 108.6.

In addition, in its order, the Board explained that its construction of the penalty matrix as imposing a warning rather than a dismissal or an administrative penalty in these circumstances is consistent with another of the Board's rules that lists violations that are subject to administrative penalties. *See id.* § 107.202 (2014) (State Board of Dental Examiners, Disciplinary Guidelines and Administrative Penalty Schedule). In particular, the Board commented that the rule does not specifically authorize the imposition of an administrative penalty for the failure-to-report violation at issue here. Furthermore, the Board stated in its order that failing to report a patient's hospitalization has the potential to result in patient harm, that it was "incumbent on the [B]oard to review the care provided to the patient" after he has been hospitalized following treatment, and that subjecting dentists to a penalty less onerous than a warning would not provide the necessary "incentive . . . to encourage compliance. Dentists could fail to report a patient . . . hospitalization and know that their failure will only result in the case being dismissed with conditions."

In light of the preceding, including the fact that the matrix does not explicitly specify the type of sanction to impose for the violation at issue, and given the manner in which agency rules are construed by appellate courts, we cannot conclude that the Board misapplied the language of the disciplinary matrix when it determined that the type of failure to report at issue in this case is a second-tier violation.

Finally, although Dr. Kim initially argued that "there is no substantial evidence inquiry relating to the question of the appropriate sanction" because this appeal involves

11

"simply interpret[ing] the unambiguous provisions of the Board's own rules as set forth in the disciplinary matrix," Dr. Kim later contends that "[t]here is no evidence in the record to support the Board's decision as to the appropriate sanction." When presenting this set of arguments, Dr. Kim acknowledged that one of the Board's experts testified that the appropriate sanction in this case was a warning, but he insists that the witness's testimony was conclusory and, therefore, "insufficient to support" the Board's order.[4] *See Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997) (explaining that "expert's bare opinion will not suffice" and that "substance of the testimony must be considered").

When resolving this issue, we must bear in mind what is and what is not being challenged in this appeal. In his appeal, Dr. Kim is not challenging the sufficiency of the evidence supporting the determination that he violated the rule requiring dentists to inform the Board when their patients are hospitalized after receiving dental treatment. *See* 22 Tex. Admin. Code § 108.6(2). Moreover, as set out above, once a violation has been found, the Board has discretion regarding what the appropriate sanction should be. *See Brown*, 281 S.W.3d at 697. In addition, previously we decided that the Board did not misconstrue the disciplinary matrix when it determined that failures to report arising under section 108.6 of title 22 of the Administrative Code are second-tier violations.

---

[4] As support for this assertion, Dr. Kim refers to various appellate cases deciding that an expert witness's statement was conclusory in a summary-judgment context not involving substantial-evidence review. *See Wadewitz v. Montgomery*, 951 S.W.2d 464, 466 (Tex. 1997) (providing that "[c]onclusory statements by an expert are insufficient to support or defeat summary judgment"); *Anderson v. Snider*, 808 S.W.2d 54, 55 (Tex. 1991) (explaining that "conclusory statements made by an expert witness are insufficient to support summary judgment"); *Mercer v. Daoran Corp.*, 676 S.W.2d 580, 583 (Tex. 1984) (stating that legal conclusion in affidavit was insufficient to support summary judgment).

Furthermore, under the disciplinary matrix, Dr. Kim was subject to a sanction for his conduct, and when it imposed the sanction at issue, the Board chose one of the permissible sanctions authorized by the chart at issue here for second-tier violations. In light of the preceding, it is not entirely clear that, under the circumstances of this case, the Board's decision to impose a warning as a sanction is subject to the specific evidentiary challenge made by Dr. Kim.

In any event, we note that during the hearing, Dr. James Kennedy, D.D.S., testified for the Board. In his testimony, he explained that Dr. Kim had a duty to report the hospitalization, that Dr. Kim should be sanctioned for his failure to report, and that the appropriate sanction was a warning. Although Dr. Kim did call Dr. John Wallace, D.D.S., to testify regarding whether Dr. Kim's treatment was the cause of A.G.'s subsequent hospitalization, Dr. Wallace did not provide testimony regarding the appropriate sanction in this case. Moreover, in its order, the Board related that in this case, "the patient was diagnosed with an infection in [her] mouth the day after receiving dental care, and yet [Dr. Kim] failed to report even though he became aware of the hospitalization." Accordingly, the Board concluded that a warning was the appropriate sanction, and other than attack Dr. Kennedy's testimony as conclusory, Dr. Kim has not met his burden of establishing that the Board's decision is not supported by substantial evidence. *See Sanchez v. Texas State Bd. of Med. Exam'rs*, 229 S.W.3d 498, 510 (Tex. App.—Austin 2007, no pet.) (explaining that under substantial-evidence review, courts presume that agency's decision is valid and supported by substantial evidence and explaining that complaining party has burden of proving otherwise); *Texas State Bd. of Dental Exam'rs v. Sizemore*, 759 S.W.2d 114, 116 (Tex. 1988) (stating that agency decision will be upheld if reasonable minds could have reached result).

For all these reasons, we overrule Dr. Kim's issue on appeal.

## CONCLUSION

Having overruled Dr. Kim's issue on appeal, we affirm the judgment of the district court.

_____

David Puryear, Justice

Before Justices Puryear, Goodwin, and Field

Affirmed

Filed: January 30, 2015