# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-18-00344-CV

---

**Personal Care Products, Inc., Appellant**

v.

**Charles Smith, Executive Commissioner of The Texas Health and Human Services Commission; and Texas Health and Human Services Commission, Office of Inspector General, Appellees**

---

### FROM THE 200TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-15-002103, THE HONORABLE RHONDA HURLEY, JUDGE PRESIDING

---

## O P I N I O N

Personal Care Products, Inc., appeals the district court's order affirming a final administrative order requiring Personal Care Products to repay $2,165,115 in overpayments that the Texas Health and Human Services Commission made to Personal Care Products, a Texas Medicaid durable medical equipment provider. We will affirm the district court.

## BACKGROUND

Personal Care Products furnishes medical supplies for incontinence to Medicaid recipients in several states, including Texas. In 2006, the Texas Health and Human Services Commission through its Office of the Inspector General (HHSC) audited Medicaid claims that Personal Care Products submitted from 2004 to 2005. As a result of the audit, HHSC identified

violations of billing and documentation requirements that resulted in potential overpayments from the Medicaid program to Personal Care Products. All of the files reviewed were initially found to have at least one of three types of errors: (1) no proof of delivery of products; (2) excessive quantities were ordered; and (3) the files lacked required documentation or the documentation was insufficient to support the claims for services. Based on the discovered errors, HHSC initially sought to recover the entire $4.7 million paid to Personal Care Products in 2004 and 2005. Following negotiations between the parties and the testimony of Jan Spears, the expert reviewer for Personal Care Products, HHSC abandoned the first two types of errors, and sought to recoup $1,152,918 in overpayments for the third category of errors. HHSC issued a Notice of Final Sanctions seeking this reduced amount in 2007. Personal Care Products filed an administrative appeal.

Because Personal Care Products did not agree to repay the overpayments and refused to pledge a security interest to show good faith, HHSC imposed a partial hold on payments due to Personal Care Products in order to recover the overpayments. Personal Care Products challenged the payment hold in federal court under 42 U.S.C. § 1983, resulting in a stay of the administrative appeal until the federal suit was resolved in 2011. *See Personal Care Prods., Inc. v. Hawkins*, 635 F.3d 155, 158 (5th Cir. 2011) (holding that a Medicaid provider did not have a property right in its Medicaid reimbursements withheld pending a fraud investigation). By the time the administrative appeal again became active, the HHSC reviewer who initially reviewed the files had retired and was not available to testify at the hearing. HHSC therefore requested another reviewer, Steven Morgan, to review the files. Morgan found errors that resulted in a higher overpayment amount than the $1,152,918 that HHSC had noticed in

2

2007. HHSC amended its notice in August 2013, seeking repayment of $2,357,115 in overpayments in its First Amended Notice of Hearing and Complaint (First Amended Notice).

Personal Care Products' expert Spears was deposed in January 2014, and based on her testimony, Morgan reevaluated some of the errors to the benefit of Personal Care Products. As of February 13, 2014, the new amount HHSC planned to seek was $2,165,115, but HHSC's 2013 pleadings were not updated to reflect this reduced amount. Among the points of contention, Personal Care Products objected that it was not informed of the $2,165,115 that HHSC was seeking within the time required by the Administrative Procedure Act (APA). *See* Tex. Gov't Code § 2001.051 ("In a contested case, each party is entitled to an opportunity (1) for hearing after reasonable notice of not less than ten days; and (2) to respond and to present evidence and argument on each issue involved in the case."). The administrative hearing was held on February 18th and 19th of 2014. The administrative law judge (ALJ) issued a proposal for decision (PFD) in June 2014, in which the ALJ agreed that HHSC had not provided Personal Care Products proper notice under the APA but concluded based on Spears's testimony that HHSC had nonetheless met its burden of establishing a statistically valid, extrapolated overpayment by a preponderance of the evidence, thereby entitling HHSC to recover $1,013,599.82. The ALJ later issued an order withdrawing that PFD. In September 2014, the ALJ issued a second PFD, concluding that Personal Care Products had sufficient notice under the APA and that HHSC is entitled to recover $2,165,115.

In March 2015, HHSC's Executive Commissioner issued a final order adopting the findings of fact and conclusions of law from the second PFD. Personal Care Products filed a motion for rehearing, which was overruled by operation of law. Personal Care Products then sought judicial review in district court. The district court affirmed the agency's final order in all

3

respects. Personal Care Products requested findings of fact and conclusions of law from the district court. The district court declined that request. This appeal followed.

## STANDARD OF REVIEW

In an appeal from an agency's final order, both this Court and the district court must review the Commissioner's decision under the "substantial evidence" rule codified in Section 2001.174 of the APA. *See* Tex. Gov't Code § 2001.174 ("Review Under Substantial Evidence Rule or Undefined Scope of Review"); Tex. Hum. Res. Code §§ 32.039 (k) (providing for a hearing under the APA), (m) (providing for judicial review of a final order), (q) ("Judicial review of a commission order . . . under this section assessing a penalty is under the substantial evidence rule. . . ."). Under this standard, a reviewing court must reverse or remand a case for further proceedings "if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are":

(A) in violation of a constitutional or statutory provision;

(B) in excess of the agency's statutory authority;

(C) made through unlawful procedure;

(D) affected by other error of law;

(E) not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole; or

(F) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

4

Tex. Gov't Code § 2001.174(2). Under this deferential standard, we presume that HHSC's order is supported by substantial evidence, and Personal Care Products bears the burden of proving otherwise. *Texas Health Facilities Comm'n v. Charter Med.-Dall.*, Inc., 665 S.W.2d 446, 453 (Tex. 1984). "Although substantial evidence is more than a mere scintilla, the evidence in the record actually may preponderate against the decision of the agency and nonetheless amount to substantial evidence." *Id.* at 452 (internal citation omitted). Substantial-evidence review "does not allow a court to substitute its judgment for that of the agency." *Railroad Comm'n v. Torch Operating Co.*, 912 S.W.2d 790, 792 (Tex. 1995). Whether the agency's order satisfies the substantial-evidence standard is a question of law. *Firemen's & Policemen's Civil Serv. Comm'n v. Brinkmeyer*, 662 S.W.2d 953, 956 (Tex. 1984). We review legal conclusions for errors of law and factual findings for support by substantial evidence. *Heat Energy Advanced Tech., Inc. v. West Dall. Coal. for Envtl. Justice*, 962 S.W.2d 288, 294-95 (Tex. App.—Austin 1998, pet. denied).

## ANALYSIS

Personal Care Products asserts four points of error on appeal: (1) the district court erred in declining to issue findings of fact and conclusions of law; (2) the adjustment to the amount of the administrative overpayment announced during the administrative hearing on the merits did not provide proper notice of the overpayment pursuant to sections 2001.051 and .052 of the APA and HHSC rules 357.489, 371.1711(c)(2)(D) and (E), and 371.1609(b)(3)(D), thereby also running afoul of the due process clause of the U.S. Constitution; (3) the ALJ violated the administrative code and the due process clause of the U.S. Constitution by issuing the second PFD too late; and (4) the Commissioner's final order adopting the ALJ's conclusion

5

that HHSC demonstrated by a preponderance of the evidence that it is entitled to recover the extrapolated overpayment was error as a matter of law.

**Findings of Fact and Conclusions of Law**

In its first issue, Personal Care Products asserts the district court erred in declining to issue findings of fact and conclusions of law. Personal Care Products asserts that Texas Rule of Civil Procedure 296 required the district court to issue findings of fact and conclusions of law: "In any case tried in the district or county court without a jury, any party may request the court to state in writing its findings of fact and conclusions of law." Tex. R. Civ. P. 296. Rule 296 gives a party "a right to findings of fact and conclusions of law finally adjudicated after a conventional trial on the merits before the court." *IKB Indus. (Nigeria) Ltd. v. Pro-Line Corp.*, 938 S.W.2d 440, 442 (Tex. 1997). A "trial" under Rule 296 "is an evidentiary hearing to the court *or* a bench trial on the merits." *Davis v. State*, 904 S.W.2d 946, 949 (Tex. App.—Austin 1995, no writ). In cases other than those finally adjudicated after a conventional trial on the merits, "findings and conclusions are proper, but a party is not entitled to them." *IKB Indus.*, 938 S.W.2d at 442.

Although administrative proceedings require findings of fact, these findings are left to the agency, subject to review for abuse. *Wylie Indep. Sch. Dist. v. Central Educ. Agency*, 488 S.W.2d 166, 168 (Tex. App.—Austin 1972, writ ref'd n.r.e.). "The administrative agency is the fact-finding body and the question to be determined by the district court on appeal is one of law." *Id.* When, as here, "[o]nly questions of law were presented to the court," "the trial court was correct in . . . refusing to make findings of fact." *Id.*; *see Scally v. Texas State Bd. of Med. Exam'rs*, 351 S.W.3d 434, 450 (Tex. App.—Austin 2011, pet. denied). ("Whether the agency's order satisfies the substantial-evidence standard is a question of law."). The district court was

not required to issue findings of fact and conclusions of law under Rule 296 after conducting a substantial-evidence review of an agency's final order. We overrule Personal Care Products' first issue.

**Proper Notice**

Personal Care Products asserts in its second issue that it did not receive proper notice under the APA and HHSC's administrative rules of the alleged violations, the amount of the overpayments, the extrapolation methodology employed by HHSC, and the calculation of the overpayments. About six months before the hearing, HHSC served its First Amended Notice seeking recoupment of $2,357,115 in overpayments. The First Amended Notice included an attached letter explaining how HHSC determined the amount of the overpayments. The letter referred to a compact disc that was also sent to Personal Care Products. The disc contained a spreadsheet showing claims submitted by Personal Care Products from 2004 through 2005 for which Personal Care Products received $4,794,314.11 in reimbursements. At the hearing, HHSC's reviewer Morgan testified that, based on his review of Spears's deposition testimony, he could not substantiate about $200,000 worth of the overpayments sought by the First Amended Notice, and as a result, HHSC could only prove a subset of $2,165,115 of overpayments that had been detailed in the First Amended Notice.

Personal Care Products asserts that HHSC's announcement at the hearing that HHSC was seeking $2,165,115 based on Spears's testimony, rather than the full amount listed in the First Amended Notice, violated the APA, HHSC administrative rules, and the due process clause of the U.S. Constitution. Personal Care Products argues that the specific amount of overpayments HHSC sought had to be included in a notice to Personal Care Products at least ten

days before the hearing under sections 2001.051 and .052 of the APA and HHSC rule 357.489. *See* Tex. Gov't Code §§ 2001.051-.052; 1 Tex. Admin. Code § 357.489 (2007) (Tex. Health & Hum. Servs. Comm'n, Notice of Hearing) (requiring compliance with section 2001.052 of the Government Code). Under section 2001.051, each party in a contested case "is entitled to an opportunity: (1) for hearing after reasonable notice of not less than 10 days; and (2) to respond and to present evidence and argument on each issue involved in the case." Tex. Gov't Code § 2001.051. At the time relevant to the instant case, section 2001.052 required that the notice include, among other items, "a short, plain statement of the factual matters asserted." Act of April 30, 1993, 73rd Leg., R.S., ch. 268, § 1, 1993 Tex. Gen. Laws 739–40 (amended 2017) (current version at Tex. Gov't Code § 2001.052). Section 2001.052 further provided: "If a state agency or other party is unable to state factual matters **in detail** at the time notice under this section is served, an initial notice may be limited to a statement of the issues involved. . . ." *Id.* (emphasis added).

Personal Care Products implies in its brief that section 2001.052 required the amount of the alleged overpayments to be stated in the notice because it is a "detail" under section 2001.052(b). The First Amended Notice lists the total amount of overpayments as $2,357,115 and lists nineteen rules that HHSC alleged Personal Care Products to have violated. Exhibit A to the First Amended Notice contained the following language:

> The violations found can be generally categorized into the following four areas:
> • Missing Title XIX Forms
> • Invalid or Incomplete Title XIX Forms
> • Billing for Services Not Rendered
> • Billing for Services Not Authorized
>
> The violations we have found resulted in an overpayment to PCP of Medicaid dollars, which we have determined to be in the amount of $2,357,115.00. This

overpayment was derived from HHSC reviewing claims with dates of service from January 1, 2004 through December 31, 2005 through a specific, detailed review of a statistically valid random sample. The statistically valid random sample contained 70 recipients; 1,468 claims, 1,940 paid claims details, and $77,281.00 in Medicaid payments. This sample was derived from a universe of 5,033 recipients, 95,935 claims, 125,271 paid claims details, and $4,794,314.00 in Medicaid payments.

As shown in the Attachment A, HHSC found program violations and takes exception to 1068 of the paid claims details contained in the statistically valid sample. These paid claim details total $37,995.00, and reflect an error rate based on total dollars paid of 49.16%. HHSC extrapolated the error rate and violations found to the universe of claims, which resulted in an extrapolated overpayment finding of $2,357,115.00 for dates of service from January 1, 2004 through December 31, 2005.

Exhibit A also lists the provisions of the Texas Medicaid Provider Procedure Manual that had been violated and further incorporated by reference the disc containing the spreadsheet of Personal Care Products' reimbursed claims.  Personal Care Products does not argue that the First Amended Notice was insufficient to provide notice of the violations, the amount of the overpayments, the extrapolation methodology, and the calculation of the overpayments insofar as they related to the claim of $2,357,115 in overpayments.   Indeed, Spears reviewed this spreadsheet and the claims for Personal Care Products and was able to understand these documents and use them to challenge the violations alleged by HHSC.  But Personal Care Products insists that because HHSC lowered the amount of overpayments it was seeking as a result of its reviewer agreeing with Spears's deposition testimony, the First Amended Notice was inadequate.

The statutory notice requirements of the APA and HHSC's rules express "the constitutional guaranty of fundamental fairness implicit in the concepts of 'notice' and 'hearing.'" *Madden v. Texas Bd. of Chiropractic Exam'rs*, 663 S.W.2d 622, 627 (Tex. App.—

9

Austin 1983, writ ref'd n.r.e.). To be meaningful, "notice" requires previous notice "relative to the issues of fact and law which will control the result to be reached by the administrative tribunal." *Id.* at 626-27; *see Scally*, 351 S.W.3d at 447 ("At a minimum, due process requires notice and an opportunity to be heard at a meaningful time and in a meaningful manner."). Here, HHSC lowered the amount it sought to recover based on its reviewer's concession that Personal Care Products' own expert was partially correct in her challenges to HHSC's allegations. Under the circumstances, we cannot conclude that First Amended Notice violated sections 2001.051 and .052 of the APA. To the contrary, HHSC provided a statement of the factual matters asserted in sufficient detail for Personal Care Products to have successfully challenged the exact subset of items about which it now claims to have been insufficiently notified.

Personal Care Products further cites three sections of the Administrative Code[1] to support its contention that HHSC must provide notice of the amount of the overpayment, the calculation of the overpayment, and the extrapolation methodology HHSC used. *See* 39 Tex. Reg. 360 (2014) (requiring OIG notices of proposed recoupment of an overpayment to include the extrapolation methodology), *adopted by* 39 Tex. Reg. 2833, (former 1 Tex. Admin. Code § 371.1609(b)(3)(D) (Tex. Health & Hum. Servs. Comm'n, Notice and Service)), *amended by* 40 Tex. Reg. 6585 (2015), *amended by* 41 Tex. Reg. 2941 (2016); 39 Tex. Reg. 376 (2014) (requiring OIG notices of proposed recoupment of overpayments to include the extrapolation methodology and the calculation of the overpayment amount), *adopted by* 39 Tex. Reg. 2833 (former 1 Tex. Admin. Code § 371.1711(c)(2)(D)&(E) (Tex. Health & Hum. Servs. Comm'n,

---

[1] Personal Care Products has not cited the specific version of each of these rules that applies, but this Court has deduced from the substance of Personal Care Products' arguments and the subsections cited the versions that are consistent with the argument. Because we determine that HHSC satisfied the notice requirements raised by Personal Care Products, we need not address whether these versions of each rule actually applied.

Recoupment of Overpayments and Debts)), *amended by* 40 Tex. Reg. 6585 (2015), *amended by* 41 Tex. Reg. 2941 (2016); 37 Tex. Reg. 5900 (2012) (requiring OIG's final notice of assessment to include a statement of the amount of the damages, a statement of the effect of the assessment, and a statement of the person's right to appeal), *adopted by* 37 Tex. Reg. 7989; (former 1 Tex. Admin. Code § 371.1715(c)(3)(B)-(D) (Tex. Health & Hum. Servs. Comm'n, Damages and Penalties)), *amended by* 39 Tex. Reg. 2833 (2014); *amended by* 41 Tex. Reg. 2941 (2016). Personal Care Products does not dispute that the First Amended Notice notified it of the amount of the overpayments, the calculation, and the extrapolation method as to the initial amount, but they urge that they should have received ten days' notice of the lower amount when HHSC abandoned some of the overpayments based on Spears's testimony. Notably, the calculation and extrapolation methods for the amount of the overpayments did not change; only the result changed because HHSC did not meet its burden of establishing some of the overpayments it alleged. On these facts, where the amount sought by HHSC was wholly a subset of the amount noticed and the difference resulted from an explanation provided by Personal Care Products' witness, we cannot conclude that the First Amended Notice was insufficient to satisfy the requirements Personal Care Products gleaned from the rules it cited. *Cf. Brown v. American Transfer & Storage Co.*, 601 S.W.2d 931, 937 (Tex. 1980) ("To be reversible the variance must be substantial, misleading, constitute surprise, and be a prejudicial departure from the pleadings."). To hold otherwise would discourage HHSC from making reasonable reductions based on evidence brought forward in the litigation process. Because we determine that the First Amended Notice provided fair notice relative to the controlling issues of fact, we also conclude that HHSC did not violate Personal Care Products' right to due process. We overrule Personal Care Products' second issue.

**Issuing a Second PFD**

Personal Care Products next asserts the ALJ violated the HHSC rules and the due process clause of the U.S. Constitution by withdrawing the first PFD and issuing the second PFD too late. HHSC argues that the ALJ's withdrawal and reissuance of a different PFD is authorized under the ALJ's general power to issue orders. *See* 1 Tex. Admin. Code § 357.483 (2007) (Tex. Health & Hum. Servs. Comm'n, Powers and Duties of the Judge) (allowing an ALJ to issue "default, final and other orders"; adopted at the same time as section 357.497). However, neither HHSC's rules nor the APA expressly mention "withdrawing" or "reissuing" a PFD. Instead, rule 357.497 allows an ALJ to amend the PFD within 45 days of issuing it:

> (b) Exceptions. A party must file exceptions to the proposal for decision within 15 days of the issuance of the proposal for decision, in accordance with section §357.488 of this title (relating to Filing and Service of Documents).

> (c) Replies. A party must file a reply to exceptions within 15 days of the filing of the exception, in accordance with section §357.488 of this title.

> (d) Amendments. The judge shall make any amendments to the proposal for decision within 15 days of the deadline under subsection (c) of this section.

1 Tex. Admin. Code § 357.497 (b)-(d) (2007) (Tex. Health & Hum. Servs. Comm'n, Proposals for Decision, Exceptions, and Replies). Both parties filed exceptions to the first PFD. Under rule 357.497, any amendment to the PFD issued on June 26 would have been due no later than August 10, 2014, which fell on a Sunday. As a result, the last date for the ALJ to amend the PFD under rule 357.497 would have been August 11, the first day following the Sunday deadline. *See* Tex. R. Civ. P. 4 (Computation of Time); 1 Tex. Admin Code § 357.481(b)(2) (Tex. Health & Hum. Servs. Comm'n, Application of this Subchapter) (allowing application of

12

the Texas Rules of Civil Procedure). The ALJ withdrew the initial PFD on August 11. Withdrawing the opinion was within the ALJ's power to amend it. Having withdrawn the opinion, it follows that the ALJ was empowered and obligated to reissue a PFD to the final decision maker, which, in this case, was the Commissioner. *See* Ronald L. Beal, 2 Texas Administrative Practice & Procedure § 8.1 at 8-3 (2018) ("The APA does not expressly provide for the timing or the issuance of a proposal for decision by the ALJ" but "the procedural rules adopted by agencies . . . clearly contemplate the issuance of a written proposal for decision to be rendered by the presiding officer for consideration by the agency.") The second proposal for decision, issued on September 9, 2014, satisfied the requirements of the APA and HHSC's rules. We overrule Personal Care Products' third issue.

**Whether HHSC Met its Burden**

In its final issue, Personal Care Products argues that HHSC failed to prove by a preponderance of the evidence that it is entitled to recover an extrapolated overpayment. *See* 1 Tex. Admin. Code § 357.493(b) (2007) (Tex. Health & Hum. Servs. Comm'n, Conduct of Hearing). Personal Care Products bases this contention on its conclusion that none of HHSC's witnesses' testimony was admissible because the First Amended Notice was insufficient and the initial PFD was correct in concluding that only Spears's testimony should be considered. Having overruled those issues, our review of this last issue is limited to determining whether substantial evidence supported the ALJ's conclusion that, "[o]n the basis of the evidence presented at the hearing on the merits, including witness testimony and exhibits, Respondent HHSC-OIG demonstrated by a preponderance of the evidence that HHSC-OIG is entitled to recover from PCP the amount of $2,165,115." The record reflects that three witnesses testified as to the

13

method and manner of calculating the overpayments that HHSC sought. The testimony of these witnesses explains how HHSC calculated the amount of the overpayment based on a sample of claims submitted by Personal Care Products. The record also contains the spreadsheet of all of the claims submitted by Personal Care Products for the years at issue, along with records from Personal Care Products that were subject to review. The testimony of the witnesses explained various types of errors with Personal Care Products' claims, such as forms that were missing doctors' signatures or forms containing names of doctors that did not match the names associated with the medical license number provided on the forms. The testimony of the three witnesses constituted more than a scintilla of evidence supporting the Commissioner's final order determining that HHSC met its burden. We overrule Personal Care Products' final issue.

## CONCLUSION

Having overruled Personal Care Products' appellate issues, we affirm the district court's judgment.

_____

Gisela D. Triana, Justice

Before Chief Justice Rose, Justices Triana and Kelly

Affirmed

Filed: June 26, 2019